**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CYNTHIA A. EMMS,

                                        Plaintiff,

        - v -                                                            Civ. No. 3:05-CV-660
                                                                              (LEK/RFT)

MICHAEL J. ASTRUE, Commissioner of Social
Security,[1]

                                        Defendant.

**APPEARANCES:**                                        **OF COUNSEL:**

HINMAN, HOWARD LAW FIRM                         EUGENE D. FAUGHNAN, ESQ.
Attorney for Plaintiff
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, New York 13902-5250


HON. ANDREW T. BAXTER                          WILLIAM H. PEASE
Acting United States Attorney[2]               Assistant United States Attorney
Northern District of New York
Attorney for Defendant
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261


**RANDOLPH F. TREECE, United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        In this action, Plaintiff Cynthia A. Emms moves, pursuant to 42 U.S.C. § 405(g), for review of

a decision by the Commissioner of Social Security denying her applications for period of disability,

Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI).[3]  Based upon the

_____

        [1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Pursuant to Federal Rule of
Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit for Jo Anne B. Barnhart.

        [2] Andrew T. Baxter became the Acting United States Attorney for the Northern District of New York on September
5, 2008, upon the resignation of the Honorable Glenn T. Suddaby and his appointment as a United States District Judge.

        [3] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed
when appealing a denial of Social Security benefits.  Both parties have filed Briefs, though oral argument was not heard.
                                                                                        (continued...)

following discussion, this Court recommends that the Commissioner's decision denying Social Security benefits be **affirmed**.

## I. BACKGROUND

### A. Facts

The facts set forth in Emms's Brief under the heading "Statement of the Case," supplemented by those in the Commissioner's Brief under "Medical Evidence" are adopted.  Dkt. No. 4, Pl.'s Br. at pp. 3-5; *see also* Dkt. No. 7, Def.'s Br. at pp. 2-5 (incorporating Plaintiff's summary of the medical and other evidence with the exception of any inferences or conclusions asserted therein).  Generally, Emms alleges a disability due to a seizure disorder, musculoskeletal pain in the shoulders and back, and depression.  Dkt. No. 3, Admin. Transcript [hereinafter "Tr."] at p. 94; Pl.'s Br. at p. 4.

### B. Procedural History

On July 22, 2003, Emms filed for period of disability, DIB, and SSI alleging a disability onset date of October 30, 2001.  Tr. at pp. 54-56 & 272-73.[4]  The applications were initially denied.  *Id*. at pp. 34-37 & 268-71.  On May 20, 2004, a Hearing was held before Administrative Law Judge (ALJ) Eugene F. Wisniewski (Tr. at pp. 309-37), who, on October 8, 2004, issued an unfavorable decision finding Emms not disabled (Tr. at pp. 12-19).  On April 8, 2005, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.  *Id*. at pp. 3-6.  Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings

---

[3](...continued)

Dkt. Nos. 4 & 7.  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

[4] Plaintiff previously filed an application for DIB and SSI on September 10, 2002.  Tr. at pp. 62-66 & 289-91.  The applications were initially denied and no further action was taken.  *Id*. at pp. 38-43 & 278-81.

this appeal.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record.  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g).  Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson v. Bowen*, 817 F.2d at 986.

### B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  Furthermore, the claimant's physical or mental impairments must be of such severity

as to prevent engagement in any kind of substantial gainful work which exists in the national economy.

*Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis

set forth in the Social Security Administration Regulations.  20 C.F.R. §§ 404.1520 & 416.920.  At Step

One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial gainful

activity, he or she is not disabled and the inquiry ends.  20 C.F.R. §§ 404.1520(b) & 416.920(b).  If the

claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and

assesses whether the claimant suffers from a severe impairment that significantly limits his or her

physical or mental ability to do basic work activities.  *Id.* at §§ 404.1520(c) & 416.920(c).  If the

claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such

impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the

Regulations.  *Id*. at §§ 404.1520(d) & 416.920(d).  The Commissioner makes this assessment without

considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675

F.2d at 467.  Where the claimant has such an impairment the inquiry ceases as he or she is presumed

to be disabled and unable to perform substantial gainful activity.  *Id*.  If the claimant's impairment(s)

does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers

whether the claimant has the residual functional capacity (RFC)[5] to perform his or her past relevant

work despite the existence of severe impairments.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  If the

---

[5] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. §§ 404.1545(a) & 416.945(a).

claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Wisniewski's Findings

Emms, as well as a vocational expert (VE), testified at the Hearing. Tr. at pp. 311-37. In addition to such testimony, the ALJ had Emms's medical records consisting of treatment reports and opinions from various treating and/or examining physicians. *Id.* at pp. 120-25 & 149-267.

Using the five-step disability evaluation, ALJ Wisniewski found that: 1) Emms had not engaged in any substantial gainful activity since October 30, 2001, the alleged onset disability date; 2) she has severe medically determinable impairments, namely a seizure disorder and musculoskeletal pain, but her depression is not severe; 3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she retained the RFC to perform

light work, with the added limitations that she could alternate between sitting and standing at will, push and pull as much as she can lift and carry, work in a controlled environment with regard to temperature, dampness, and exposure to hazardous machinery and equipment, and occasionally use steps; in light of this RFC, she could perform her past relevant work as a clerical worker; and 5) even if she could not perform her past relevant work, based on the testimony of a vocational expert as well as Medical-Vocational Rule 202.21, Plaintiff was capable of making an adjustment to work that exists in significant numbers in the national economy, thus she was not disabled. *Id.* at pp. 13-19. After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

### D. Emms's Contentions

Plaintiff contends that the ALJ's decision denying benefits should be reversed because the ALJ (1) erroneously determined her RFC; (2) failed to properly apply the treating physician rule; (3) erroneously determined at Step Four that Plaintiff could perform her past work; (2) erred at Step Five by failing to present a proper hypothetical to the vocational expert; and (3) improperly evaluated Plaintiff's credibility. *See generally* Pl.'s Br. The Court will consider each of Emms's contentions.

### 1. Residual Functional Capacity

Plaintiff contends that the ALJ's RFC determination that she could perform light work with certain limitations is not supported by substantial evidence in the record. Pl.'s Br. at pp. 7-9. Plaintiff further claims that in making the RFC determination, the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Kevin Hastings, and improperly relied upon the opinion of state agency consultant Dr. Diane Paukett. *Id.* at pp. 6-7.

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining

the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments.  *See* 20 C.F.R. §§ 404.1545(a) & 416.945(a).  If the applicant can still perform the kind of work he or she performed in the past, they are deemed not disabled.  *Id*. at §§ 404.1520 (e) & 416.920(e).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id*. at §§ 404.1545(a)(3) & 416.945(a)(3).

Here, the ALJ found that Plaintiff had the RFC to perform light work with the added limitations that she could alternate between sitting and standing at will, push and pull as much as she can lift and carry, work in a controlled environment with regard to temperature, dampness, and exposure to hazardous machinery and equipment, and occasionally use steps.  Tr. at p. 16.  In making this determination, the ALJ gave substantial weight to the opinion of the state agency medical consultant, Dr. Paukett, and accorded little weight to the opinion of Dr. Hastings, a treating source.  *Id*. at p. 15.

### a.  Treating Physician Rule

The Regulations require an ALJ to give "controlling weight" to the opinion of a treating physician on the issue of the nature and severity of a claimant's impairment if that opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  If the treating physician's opinion is not given controlling weight, the weight to be afforded to the opinion is to be based on several factors, which include: (1) the length, nature and extent of the treatment relationship, including the frequency of examination; (2) the evidence in support of the treating physician's opinion; (3) the

consistency of the medical opinion with the medical record as a whole; (4) whether the treating physician is a specialist; and (5) any other relevant factors that tend to support or contradict the treating physician's opinion.  20 C.F.R. §§ 404.1527(d)(2) &  416.927(d)(2) (cited in *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998)).

The Treating Physician Doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time nonexamining, non-treating physician.  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In this case, the ALJ accorded little weight to Dr. Hastings's opinions, stating they were unsupported by examination findings and treatment history.[6]  Tr. at p. 15.  On May 28, 2002, Plaintiff reported to Dr. Hastings that she had constant pain in her head, neck, shoulders, back, arms, and hands. *Id*. at p. 163.[7]  He noted that an x-ray taken of her elbow was negative, and assessed her diagnosis as chronic bilateral elbow tendonitis and shoulder strains.  *Id.*  Dr. Hastings found that her neck was supple and tender with a restricted range of motion, the range of motion in her extremities was limited secondary to pain, she was grossly intact with no focal deficits, deep tendon reflexes were equal, grip strength was unequal right less than left, there were many tenderpoints, and she had limited range of

---

[6] Plaintiff alleges that the ALJ improperly discounted Dr. Hastings's RFC assessment. Pl.'s Br. at p. 7.  However, there is no record of an RFC assessment rendered by Dr. Hastings in the Administrative Transcript, nor does Plaintiff specifically cite to one.

[7] It should be noted that Dr. Hastings evaluated and treated Plaintiff during the pendency of her Workers' Compensation claim.  *See generally* Tr. at pp. 163-66, 184-236, & 250-67.  The Court notes that disability standards under the Social Security Act differ significantly from those applicable under various state's Workers' Compensation laws.  *Crowe v. Comm'r of Soc. Sec.*, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (citing *Gray v. Chater*, 903 F. Supp. 293, 301 n.8 (N.D.N.Y. 1995) ("Workers' compensation determinators are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.")).

motion of her thoracic and lumbar spine. *Id*. at pp. 164-65. Apart from this examination, the remainder of Dr. Hastings's treatment notes come in the form of checkmarks in categories listed on a standardized evaluation form. *See generally id*. at pp. 184-236 & 250-67. This generalized reporting makes it difficult to ascertain many of his findings as there is little by way of his subjective opinions/observations of Emms's condition. Nevertheless, the treatment notes generally show that Plaintiff had restricted range of motion and tenderness in her upper extremities, muscle tension, cervical strain, muscle disuse atrophy, occasional limited range of motion in her lower extremities, weakness, and exercise intolerance. *See generally id*. at pp. 185, 187, 189, 191, 193, 195, 197, 199, 201, 203, 206-08, 211, 215-17, 219, 222-23, 225, 227, 229, 231, 234-35, 250-55, & 267. Dr. Hastings also opined that Plaintiff was disabled on many occasions.[8] *See id.* However, these findings made by Dr. Hastings are not supported by substantial evidence in the record and the ALJ did not err in according them little weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative."); *see also* 20 C.F.R. §§ 404.1527(e)(1) & 416.927(e)(1) (Commissioner provides the ultimate decision on disability).

As stated previously, the ALJ gave significant weight to the opinion of Dr. Paukett, state agency consultant, who examined Plaintiff on November 12, 2002. Tr. at pp. 15 & 173-78. Dr. Paukett noted that Emms could cook, mop, or vacuum for five to ten minutes before feeling discomfort in her shoulders, do laundry, lift groceries with occasional help, manage her money, care for her children, socialize with friends, drive, shower, bathe, and dress herself. *Id*. at p. 174. Upon physical examination, she found that Emms was in no acute distress, her gait and stance were normal, she could heel and toe walk without difficulty, squat was full, she needed no help changing nor getting on and

---

[8] As noted previously, Dr. Hastings' conclusions regarding disability were made in the context of the Workers' Compensation law.

off the examination table, and she could rise from her chair without difficulty. *Id*. at p. 175. Dr. Paukett reported that Emms's neck was supple, she had normal flexion and extension of her cervical spine with limited rotation and lateral flexion, there was full flexion, extension, lateral flexion, and rotary movements bilaterally of her lumbar spine, she had full range of motion of her elbows, forearms, wrists, hips, knees, and ankles bilaterally, there was limited range of motion in her shoulders although adduction and internal and external rotation were normal bilaterally, she had muscle tension in the cervical and thoracic musculature, and there was spasm and tenderness in the trapezius musculature. *Id*. at pp. 175-76. She further stated that Emms had 5/5 strength in her upper and lower extremities, her joints were stable and nontender, there was no effusion, sublaxations, nor contractures, she had no muscle atrophy, her hand and finger dexterity was intact, grip strength was 5/5 bilaterally, deep tendon reflexes were equal, there were no focal neurological deficits, and straight leg raising was negative bilaterally. *Id*. at pp. 176-77. Dr. Paukett concluded that Emms had no limitations with speech, vision, hearing, fine or gross motor activities of the upper extremities, sitting, standing, walking, stair climbing, or bending. *Id*. at p. 177. Dr. Paukett opined, however, that Emms had a mild limitation with regard to household activities and mild to moderate limitations with lifting and strenuous physical activity. *Id.* The findings within this evaluation and the conclusions rendered are supported by substantial evidence in the record.

In April 2001, Dr. Sowbhagya L. Sonthineni stated that Plaintiff had a minimal tremor on the left, there was no focal weakness or sensory deficits, deep tendon reflexes were symmetrical, and gait was normal. *Id*. at pp. 150-51. Then, on October 15, 2001, Dr. Galen E. Graham evaluated Plaintiff and found that her neck was supple and nontender, there was full range of motion of her neck, she had full range of motion of her hands without signs of synovitis or swelling, and flexion and extension in

her wrists were normal. *Id*. at p. 169. Dr. Graham further reported that there was tenderness in Emms's elbows and shoulders, although internal and external rotation was full and abduction strength was normal in the shoulders. *Id.* She also had good range of motion in her hips, flexion and extension in her knees were normal, her ankles and feet were without synovitis or swelling, reflexes were equal at the triceps, biceps, knees, and ankles, and motor strength testing was normal bilaterally. *Id*. at pp. 169-70. In June and July 2002, Dr. Graham stated that sensation was grossly intact, range of motion was full in Plaintiff's wrists, there was no triggering, and there was some tenderness in her forearms and shoulders. *Id*. at pp. 161-62.

On August 12, 2003, another state agency consultant, Dr. John Cusick, examined Plaintiff. *Id*. at pp. 241-45. Dr. Cusick stated that Emms could cook, take care of her children, shower, bathe, dress herself, drive, and read. *Id*. at p. 242. He noted that with respect to cleaning, laundry, and shopping, she needed some help with lifting. *Id.* Upon physical examination, he found that Emms was in no acute distress, her gait was normal, she could heel and toe walk without difficulty, squat was full, she needed no help changing nor getting on and off the examination table, and she could rise from her chair without difficulty. *Id*. at p. 243. Dr. Cusick stated that Plaintiff had full flexion, extension, lateral flexion, and rotary movements bilaterally of her cervical and lumbar spine and full range of motion of her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. *Id*. at pp. 243-44. He also reported that Emms had 5/5 strength in her upper and lower extremities, there was no joint effusion, inflamation, nor instability, she had no muscle atrophy, her hand and finger dexterity was intact, grip strength was 5/5 bilaterally, reflexes were equal, there was no sensory abnormality, and straight leg raising was negative bilaterally. *Id.* Dr. Cusick opined that based on the objective findings, Emms had no limitations with respect to activities involving the upper or lower extremities or repetitive use of her

lower back, thoracic spine, and neck.  *Id*. at p. 244.  Additionally, on the same day, a cervical spine x-ray revealed that the vertebral body heights and disc spaces were maintained at all levels, there was no spondylolisthesis, spondylolysis, or osteophytosis, and the cervical lordotic curvature was straightened. *Id*. at p. 246.

The ALJ's reliance upon the state agency consultant's opinion was not in error.  The opinion of a state agency consultative examiner may constitute substantial evidence to support an ALJ's determination, provided that there is other supporting evidence in the record.  *See* 20 C.F.R. §§ 404.1527(f) & 416.927(f); *see also Brunson v. Barnhart*, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (noting that the opinions of non-examining sources may be considered provided they are supported by evidence in the record).  Such exists in this case as opinions from Drs. Sonthineni, Graham, and Cusick support the findings made by Dr. Paukett.

Furthermore, the findings and conclusions rendered by Drs. Paukett, Sonthineni, Graham, and Cusick, supplemented by the opinion of the disability analyst, provide substantial evidence for the ALJ's RFC determination.  In December 2002, state agency disability analyst M. Curry concluded that Emms could lift up to ten pounds frequently and twenty pounds occasionally and sit, stand, and walk for about six hours in an eight-hour day.  Tr. at p. 121.  Curry stated that Plaintiff had no postural, manipulative, visual, nor communicative limitations.  *Id*. at pp. 122-23.  It was further noted that Plaintiff should avoid all exposure to hazards such as machinery and heights due to a history of seizure disorder.  *Id*. at p. 123.  The ALJ incorporated these conclusions with those of Dr. Paukett in making his RFC determination and based upon the record, substantial evidence supports the ALJ's decision.

Although Plaintiff argues her depression eroded the RFC determination, there is no evidence in the record to substantiate her claims.  There are no records that Plaintiff sought therapy or was

treated by a psychiatrist or psychologist.  Furthermore, even though Dr. Hastings indicated that Emms had anxiety/depression and prescribed her Zoloft, he is a doctor of osteopathic medicine and is neither a psychologist nor psychiatrist.  *See generally id*. at pp. 185, 187, 189, 191, 193, 195, 197, 199, 201, 203, 206-08, 211, 215-17, 219, 222-23, 225, 227, 229, 231, 234-35, 250-55, & 267.  Moreover, Dr. Sonthineni stated that Plaintiff was well oriented, had no mental impairment, and her speech was clear, coherent, and relevant.  *Id*. at pp. 150-51 & 155.  Thus, her alleged mental impairment would not have eroded her ability to perform work.[9]

Accordingly, we find that the ALJ did not err in rendering Plaintiff's RFC, nor did he improperly apply the Treating Physician Rule.  Furthermore, the ALJ's RFC analysis is supported by substantial evidence.

### 2.  Steps Four and Five – Vocational Expert (VE) Testimony

Plaintiff claims that because the ALJ erred in making his RFC determination, the VE's testimony was flawed as it was based upon an improper hypothetical.

When the testimony of a VE is utilized, as was here, the ALJ must present a hypothetical that incorporates all of Plaintiff's impairments.  *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992) for the proposition that "the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments").  If the ALJ fails to pose hypothetical questions that do "not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute

---

[9] Plaintiff also avers that the diagnosis of depression was improperly excluded as a severe impairment.  Pl.'s Br. at p. 8.  However, this argument is unavailing as Plaintiff does not dispute that the ALJ made appropriate findings in Steps One through Three of the sequential analysis.  *Id.*  In fact, Plaintiff specifically states that "there is no dispute as to whether [she] has a 'severe impairment' within the meaning of the Social Security Act and Regulations."  *Id.*  Accordingly, and based upon the evidence discussed, the alleged depression would not affect the RFC determination.

substantial evidence to support a conclusion of no disability." *Id.* (citing *Morse v. Shalala*, 16 F.3d. 865, 874 (8th Cir. 1994)).

Here, the VE testified that Plaintiff's prior work experience as a clerical worker was classified as light, semi-skilled work. Tr. at p. 332. The ALJ then presented his first hypothetical, asking the VE to assume an individual could do no more than light work, who needed a sit/stand option in a controlled environment as to temperature and dampness, and the person could not be around hazardous machinery or equipment, or use steps more than occasionally. *Id*. at p. 333. The VE testified that such an individual could perform work as a clerical worker, which is Plaintiff's past relevant work, and that there were a significant number of these jobs in the national and regional economy. *Id.* The ALJ then asked whether any other jobs exist in the national economy that such an individual could perform on the light and sedentary level with a sit/stand option. *Id.* The VE stated that in addition to the clerical worker position, she could perform work as a file clerk on the light level and staffing clerk and telephone solicitor on the sedentary level. *Id*. at p. 334. Thereafter, the ALJ presented a third and final hypothetical regarding whether jobs would be available if a person were forced to take additional rest periods other than normal breaks. *Id*. at p. 335. The VE stated that no jobs would be available. *Id*

In this case, the ALJ's hypotheticals were proper as were his determinations that Plaintiff could perform her past work and other work in the national and regional economy. As previously discussed, the ALJ's RFC determination was supported by substantial evidence in the record. *See supra* Part II.D.1. Thus, it was proper for the ALJ to include that RFC in his hypotheticals to the VE. Furthermore, there was no evidence provided that established that Plaintiff had a severe mental impairment that interfered with her ability to work. *Id.* In fact, as noted above, Plaintiff conceded that the ALJ correctly found that Plaintiff's depression was not severe. *See supra* note 8. The ALJ did not

err in relying upon the testimony of the VE in all respects.

### 3. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly evaluated her credibility when he found that her testimony was not entirely credible.  Pl.'s Br. at pp. 9-11.

Under 20 C.F.R. §§ 404.1529(a) & 416.929(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination.  20 C.F.R. §§ 404.1529(a) & (d) & 416.929 (a) & (d).  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings.  *Id*. at § 404.1529(c)(4) & 416.929(c)(4).  Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work.  *Id.* at §§ 404.1529(c) & 416.929(c).  "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence."  *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).  However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged."  *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987).  Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence."  *Id*. at 608

(citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)).

In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the

Regulations including:

> (i)     [The claimant's] daily activities;
> (ii)    The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
> (iii)   Precipitating and aggravating factors;
> (iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
> (v)     Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
> (vi)    Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)   Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

In his decision, the ALJ stated that Plaintiff's testimony concerning her symptoms and

limitations were not entirely credibile.  Tr. at pp. 14-15.  In making this determination, the ALJ cited

to medical evidence establishing that the existence of Plaintiff's medical impairments did not equate

to the severity of her conditions as described by her.  *Id*. at p. 15.  The ALJ discussed Plaintiff's claim

that she had difficulty performing activities of daily living such as cleaning, shopping, cooking, and

laundry.  *Id*.  However, Plaintiff told Dr. Paukett that she could cook, mop, or vacuum for five to ten

minutes before feeling discomfort in her shoulders, do laundry, lift groceries with occasional help, care

for her children, socialize with friends, drive, shower, bathe, and dress herself.  *Id*. at p. 174.  Plaintiff

also related to Dr. Cusick that she could cook, take care of her children, shower, bathe, dress herself,

drive, and read, and that with respect to cleaning, laundry, and shopping, she needed some help with

lifting.  *Id*. at p. 242.

The ALJ further reviewed and discussed Plaintiff's alleged precipitating and aggravating

factors, the improvements she felt from taking her medications, the treatment she received from pain management, as well as the fact that she used to rest before completing certain activities. *Id*. at pp. 14-15. The medical records show that Plaintiff did not complain about the side effects of any of her medications and that she sought treatment mainly through medications. *See generally id*. at pp. 149-267. Furthermore, medical evidence from Drs. Sonthineni, Graham, Paukett, and Cusick show that Plaintiff was not as limited in her physical abilities as claimed. *See supra* Part II.D.1.a. Accordingly, the ALJ's determination regarding Plaintiff's credibility is supported by substantial evidence.

### III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding Emms was not disabled, the ALJ applied the correct legal standards and his factual findings are supported by substantial evidence. Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further;

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

*-17-*

Date:   March 18, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge